IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| BRYAN M. PISANI, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-12-1654 |
| BALTIMORE CITY POLICE, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Bryan M. Pisani, *pro se*, sued the Baltimore City Police Department (the "BCPD") and others[1] (collectively, the "Defendants") for employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[2] and the Americans with Disabilities Act of 1990 (the "ADA")[3]. For the following reasons, the Defendants' unopposed motion to dismiss will be granted in part and denied in part.

---

[1] Pisani also sued Major Margaret Barillaro and Deputy Major Ian Dombrowski.

[2] 42 U.S.C. §§ 2000e, *et seq.*

[3] 42 U.S.C. §§ 12101, *et seq.*

I. Background[4]

Pisani is a Virginia citizen and a former Baltimore City police officer. *See* Compl. ¶¶ 1, 6. In or about 2009, anxiety and related health problems "forced" Pisani to "slow down" at work. *Id.* ¶ 6; *see* Supplement at 2. Specifically, Pisani was diagnosed with anxiety and panic attacks. Supplement at 2. Despite these issues, Pisani was named "Officer of the Month" in February 2009 and was named "Officer of the Year" by the American Legion. Supplement at 4.

At about 7:00 a.m. on December 24, 2009, Lieutenant Piel informed Pisani that he was being transferred from the sector 3 "Pigtown" neighborhood to sector 1 (Brooklyn). Compl. ¶ 6; Supplement at 3-4. Piel told Pisani that the transfer "c[ame] from" Barillaro, who was upset with Pisani for calling out sick during a blizzard five days earlier. Supplement at 4. Pisani asked Piel, "So, my being moved is directly related to me using a medical day during the blizzard," to which Piel responded, "Yes." *Id.* BCPD officers typically are not "moved around"

---

[4] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The following facts are taken from the complaint (ECF No. 1) and a supplement to the complaint (ECF No. 1-1) [hereinafter, "Supplement"].

within their district unless upon request, grievance, or internal investigation. Id. at 5.

On January 2, 2010, Pisani's new sergeant told him that "[his] stats looked a little sour." Supplement at 6. Also in early January 2010, Pisani filed a grievance challenging his transfer with his Fraternal Order of Police ("FOP") representative. Id. at 5. On January 13, 2010, Pisani met with Major Bloodsworth to discuss the grievance. Id. Bloodsworth initially told Pisani that he had been transferred because one of Pisani's supervisors had reported problems with a "clique" in Pisani's sector. Id. Near the end of the meeting, Bloodsworth admitted that the change was "in part due to [Pisani's] absence." Id. at 6. In March 2010, Barillaro assigned Pisani to a foot detail, purportedly because of his low statistics. See Compl. ¶ 6.

On March 7, 2011, Pisani filed a sexual harassment claim against Sergeant Simon with Lieutenant McGarry, which was never resolved. Compl. ¶ 6; Supplement at 7. On March 14, 2011, McGarry assigned Pisani to work in the same sector as Simon. Supplement at 7. After further problems with Simon, McGarry met with Barillaro and Pisani was moved. Id. On March 17, 2011, Pisani was transferred off his shift, effective March 20, 2011. Id. The shift change required Pisani to work at night for two months. Id. From June 20 to 21, 2011, Pisani was assigned to a

3

foot detail in downtown Baltimore, which was "stat and medically motivated." Id. On September 15, 2011, Pisani was transferred again, effective September 25, 2011. Id.

On September 19, 2011, Pisani voluntarily attended a mental health visit with Psychology Consultants Associated ("PCA") to address work-related stress and panic attacks. Compl. ¶ 6; Supplement at 8.[5] On September 21, 2011, Pisani met with Lieutenant Colonel Green, who told Pisani that he would be transferred again, "as soon as [he] clear[ed] stress leave." Compl. ¶ 6; Supplement at 8. Green told Pisani that the transfer had been recommended by Lieutenant Butler. Supplement at 8. When Pisani later spoke with Butler, Butler denied involvement in the decision. Id. Pisani believes that Barillaro ordered the transfer "purely [in] retaliation for stats, filing grievances[,] and medical use." Id.

On December 8, 2011, Barillaro ordered an audit of Pisani's medical leave. Compl. ¶ 6. That day, Internal Investigations Division ("IID") Sergeant May called Pisani at home to tell him that his medical leave would expire in eight days. See Supplement at 8. Pisani returned to work the next day, despite being

---

[5] The Court will assume that "PCA" refers to "Psychology Consultants Associated," which addresses police officers' "psychological and emotional concerns." *Police Officers Services*, Psychology Consultants Associated, http://baltimorepsychologists.net/police-officers-services/ (last visited Aug. 11, 2013).

4

on "special" medication. Compl. ¶ 6. Pisani told Administrative Officer Jones that he would have to take sleeping pills by 8:00 p.m. Supplement at 9. Jones informed Dombrowski, who then assigned Pisani to a 7:00 p.m. to 3:00 a.m. shift. *Id.* Dombrowski's reply was "so fast that it appeared preplanned" and "no sympathy was given to [Pisani's] medical situation." *Id.* On January 12, 2012, Pisani was returned to the regular shift (3:00 p.m. to 11:00 p.m.). *Id.* at 10.

On January 30, 2012, Pisani filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"). Compl. ¶ 9.[6] On March 7, 2012, the EEOC issued Pisani a right to sue letter. ECF No. 1-2. On June 5, 2012, Pisani filed suit. ECF No. 1.[7] Summonses were issued on August 1, 2012, and returned as executed on October 4, 2012. ECF Nos. 3, 4. On October 19, 2012, the Defendants moved to dismiss. ECF No. 5. On October 22, 2012, the Clerk's Office mailed Pisani a

---

[6] The record does not contain the Discrimination Charge.

[7] The complaint appears to plead three causes of action:
   (1) Sex-based discrimination, in violation of Title VII;
   (2) Retaliation, in violation of Title VII; and
   (3) Disability discrimination, in violation of the ADA.
*See* Compl. Pisani seeks injunctive relief, including "[n]o unnecessary detail orders [or] involuntary transfers" and reinstatement; he also seeks $2,025,000 in damages. *See id.* at 3-4.

Rule 12/56 letter. ECF No. 6.[8] Pisani has not responded. *See* docket.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[8] The Rule 12/56 letter is sent to *pro se* parties to advise them that a dispositive motion has been filed and failure to timely respond may result in the entry of judgment against them or dismissal of the case. *See* ECF No. 6.

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Motion to Dismiss

The Defendants argue that Pisani's complaint must be dismissed because it fails to state claims upon which relief can be granted. ECF No. 5-1 at 5-16. The Defendants also argue that Pisani failed to exhaust his administrative remedies, and Barillaro and Dombrowski are not Pisani's "employers" under Title VII and the ADA. *See* ECF No. 5-1 at 5-10. Pisani has not opposed the motion. *See* docket. Because Pisani is a *pro se* litigant, his filings will be construed liberally, even if his arguments and pleadings are "inartful[]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted).

1. Title VII Claims

   a. Sex-Based Discrimination

Title VII prohibits an employer from "discriminat[ing] against any person with respect to his compensation, terms, conditions, or privileges of employment," because of the person's sex. 42 U.S.C. § 2000e-2(a). To prove Title VII discrimination, a plaintiff must provide direct evidence of a Title VII violation, or proceed under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case that raises an inference of illegal conduct.[9] The burden then shifts to the defendant to articulate a legitimate, lawful reason for its actions.[10] The plaintiff, in turn, must "establish[] that the employer's proffered explanation is pretext."[11]

A prima facie case under *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement." *Swierkiewicz*

---

[9] *See Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

[10] *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 407 (4th Cir. 2005).

[11] *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks omitted).

v. *Sorema N.A.*, 534 U.S. 506, 510 (2002).[12] Instead, the "ordinary rules for assessing the sufficiency of a complaint apply." *Id.* Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Benahmed v. BAE Sys. Tech. Solutions & Servs., Inc.*, No. 12-CV-01974-AW, 2012 WL 5426432, at *4 (D. Md. Nov. 6, 2012) (a Title VII plaintiff "retains the burden of alleging facts sufficient to state all the elements of his claim").

"The elements of a prima facie case vary depending on the form of discrimination alleged." *Jenkins v. Balt. City Fire Dep't*, No. SKG-10-125, 2012 WL 1109730, at *12 (D. Md. Mar. 30, 2012). Here, Pisani alleges that he was subjected to disparate treatment because of his sex. *See* Compl. ¶¶ 5-6. To establish a prima facie case of disparate treatment, Pisani must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.

---

[12] *See also id.* (explaining that the Supreme Court has "rejected the argument that a Title VII complaint requires greater particularity, because this would too narrowly constric[t] the role of the pleadings" (internal quotation marks omitted)).

Here, The Defendants concede that Pisani is a member of a protected class, but argue that, "without more than the Complaint," it is "impossible" to determine whether Pisani was satisfactorily performing. ECF No. 5-1 at 11. Even if Pisani had adequately pled satisfactory job performance, the Defendants contend that he has not adequately alleged adverse employment action or different treatment from similarly situated female employees. *Id.*

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). "The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." *Id.* Rather, reassignment "can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on [the plaintiff]." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999); *id.* (Title VII was not intended to "provide redress for trivial discomforts endemic to employment"). "In sum, absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level [i]s not . . . an

adverse employment action even if the new job does cause some modest stress not present in the old position." *Id.* at 256-57.

Here, Pisani has alleged that he was repeatedly transferred to different shifts and sectors and assigned to details that he disliked. *See* Compl. ¶ 6; Supplement at 3-4, 7-9. However, he does not allege--or even suggest--that the reassignments caused any decrease in his compensation, job title, level of responsibility, or opportunity for promotion. *Cf. Boone*, 178 F.3d at 256-57; *see also Jackson v. Balt. Police Dep't*, No. WDQ-11-3569, 2013 WL 1121412, at *6 (D. Md. Mar. 15, 2013) (police officer who alleged that he was transferred to another district and "detailed/demoted to patrol"--but did not allege his prior position or how a patrol assignment had less responsibility or any salary implications--failed to state adverse employment action). Pisani's "vague allegations of stress" resulting from the reassignments are insufficient to state a claim. *Boone*, 178 F.3d at 256.

Neither has Pisani adequately alleged that he was treated differently than similarly situated female employees. Similarly situated employees are alike "with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000); *see also Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007). "[A]n employee need not show complete identity in comparing

himself to the better treated employee, but he must show substantial similarity." *Radue*, 219 F.3d at 618. Here, the complaint is devoid of any factual allegations about Pisani's female colleagues. *See generally* Compl.; Supplement. Without such allegations, Pisani cannot prove that the employment actions about which he complains--even if adverse--were because of his sex.

Thus, Pisani has failed to state a claim for sex-based discrimination.

    b. Retaliation

Title VII also prohibits employers from "discriminat[ing] against any of [their] employees . . . because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] . . . participated in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e-3(a). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *See Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The Defendants argue that Pisani "cannot make out any of the elements to support a prima facie case of retaliation under Title VII." *See* ECF No. 5-1 at 15.

Under Title VII, "protected activity" includes: (1) participation in any proceeding under Title VII (the "participation clause"), and (2) opposition to a practice declared discriminatory under Title VII (the "opposition clause"). *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999) (internal quotation marks omitted)). Title VII does not define the term "oppose." However, the U.S. Supreme Court has held that the term "carries its ordinary meaning," i.e., "to resist or antagonize," "to contend against," "to confront," "to resist," or "to withstand." *Crawford,* 555 U.S. at 276 (internal quotation marks omitted).

Without the Discrimination Charge, it is difficult to determine the basis for Pisani's retaliation claim. He appears to allege that he was retaliated against for complaining to his FOP rep about his reassignment to Brooklyn after he used a sick day in December 2009, and--construing the complaint liberally-- for filing a sexual harassment complaint against Simon in March 2011. *See generally* Compl.; Supplement. Depending on the circumstances, both could be considered protected.

The adverse action element of a retaliation claim is different from that of disparate treatment and is that "a reasonable employee would have found the challenged action materially adverse." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted). The standard is set "in general terms," because "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69. For instance, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id.*

Pisani asserts that several adverse employment actions were taken against him after lodging these complaints, including: (1) assignment to a foot detail in March 2010; (2) assignment to the same sector as his alleged sexual harasser, and to a two-month night shift, in March 2011; (3) assignment to another foot detail in June 2011; (4) transfer in September 2011; and (5) assignment to a night shift in December 2011, effective through January 12, 2012. *See generally* Supplement. Given Pisani's health problems, which he alleges were known to the Department, these reassignments might have reasonably dissuaded him from

making or supporting a Charge of Discrimination. See Burlington, 548 U.S. at 68-69.

Pisani has also adequately alleged causation. First, Pisani has alleged specific facts showing that he was reassigned because he had taken a sick day; he filed a grievance challenging the transfer; and he was then subjected to further transfers and other unfavorable assignments. Compl. ¶ 6; Supplement at 3-4. Even if there were no specific facts to support Pisani's conclusions that the actions taken against him were related to his protected activities, the relatively short time period between the protected activities and the alleged retaliation permits this Court to infer a causal connection between the events. German v. Akal Sec., Inc., No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011) (citing Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)).

Thus, Pisani has stated a claim for retaliation against the BCPD.[13]

---

[13] The Defendants alternatively argue that Pisani's claim must be dismissed because, without the Discrimination Charge, they "cannot" assess whether Pisani has exhausted his administrative remedies, and because "many" of the allegations in the complaint are time-barred under 42 U.S.C. § 2000e-5(e)(1). ECF No. 5-1 at 7.
   The Defendants will have the opportunity to obtain the Discrimination Charge during discovery. The Defendants' timeliness argument also fails, because Pisani's complaint contains allegations about retaliation that occurred in the 300 days preceding the filing of his Charge. See, e.g., Supplement at 7-8. Moreover, Pisani has alleged that the discriminatory

2. ADA Claim

As an initial matter, it is unclear whether Pisani's disability discrimination claim arises under Title I[14] or II[15] of the ADA, or both. "Whether Title I or II governs discrimination claims is often contested because Title I incorporates administrative prerequisites that are not required under Title II."[16] Because Title II's regulations adopt Title I standards

---

acts occurred "[o]n or about 12/24/09 through present *and continuing*," Compl. ¶ 8; thus, his allegations about earlier conduct may be timely under the continuing violation theory. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) ("The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination . . .").

Because individual supervisors are not "employers" under Title VII, *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998), Pisani's retaliation claim against Barillaro and Dombrowski will be dismissed.

[14] Title I of the ADA provides, in relevant part, that: "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

[15] Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[16] *Allen v. Hamm*, No. RDB 05-0879, 2006 WL 436054, at *5 (D. Md. Feb. 22, 2006) (*citing* 42 U.S.C. §§ 12117(a), 2000e-5), *aff'd*, 226 F. App'x 264 (2007) (per curiam), *cert. denied sub nom. Blades v. Hamm*, 552 U.S. 951 (2007).

for purposes of evaluating employment discrimination claims against public entities, see 28 C.F.R. § 35.140(b)(1), the Court need not determine whether Pisani intended to sue for employment discrimination under Title I or II, and, if he intended to sue under Title II, whether his claim is cognizable. Cf. Allen, 2006 WL 436054, at *5.

As stated above, Title I of the ADA prohibits discrimination against "qualified individual[s]" on the basis of disability, in regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." Id. § 12112(b)(5)(A). Pisani's complaint, liberally construed, appears to assert a claim under this subsection. See, e.g., Supplement at 9 (Dombrowski assigned Pisani to a 7:00 p.m. to 3:00 a.m. shift despite being told that Pisani had to take sleeping pills by 8:00 p.m.).

To establish a prima facie case of failure to accommodate under the ADA, Pisani must show that: (1) he had a disability within the meaning of the statute; (2) the BCPD had notice of

his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the BCPD refused to accommodate him. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (internal quotation marks omitted), *cert denied*, 535 U.S. 933 (2002). The Defendants argue that Pisani has failed to satisfy any of these elements. *See* ECF No. 5-1 at 12-14.

To assess a claim for disability employment discrimination, the first question is whether the plaintiff is disabled and is an "otherwise qualified individual." *Rhoads*, 257 F.3d at 3. The ADA defines disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). "The phrase 'substantially limits' sets a threshold that excludes minor impairments from coverage under the ADA." *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). A person shows that he is regarded as having such an impairment if he establishes that he "has been subjected to an action prohibited under this chapter

18

because of an actual or perceived physical or mental impairment." Id. § 12102(3).

A "qualified person" with a disability is defined as an individual who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Here, Pisani has failed to adequately allege that he suffers from a "disability" within the meaning of the ADA. First, he has not plausibly alleged that his stress and anxiety limited one or more of his major life activities. In fact, the complaint specifically alleges that, after seeing a psychologist, Pisani "learn[ed] how to control [the] problem." Supplement at 3. Even assuming that he had plausibly alleged impairment of a major life activity, there are no facts to suggest that the impairment was "substantial." To the contrary: over the course of five years, Pisani called out sick only three times, for pneumonia, a negative reaction to the H1N1 flu shot, and a cold. Supplement at 4. Pisani has not plausibly alleged that, because of his anxiety, he was "generally foreclosed" from jobs utilizing his skills. Rhoads, 257 F.3d at 388. Similarly, there are no facts to suggest that the BCPD perceived Pisani was substantially limited in his ability to work. See Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 703 (4th Cir. 2001)

(employer's knowledge of employee's impairment, without more, does not indicate that the employer regarded him as disabled).

Thus, Pisani has failed to state a claim for discrimination based on disability.

III. Conclusion

For the reasons stated above, the Defendants' unopposed motion to dismiss will be granted in part and denied in part.

_8/14/13_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge